UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| WILLIAM C. KING, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | No. 3:18-cv-891 |
| v. | ) | CHIEF JUDGE CRENSHAW |
| | ) | |
| f/n/u HOSKINS., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Pending before the Court is a pro se motion for emergency injunctive relief (Doc. No. 2) filed by Plaintiff William C. King, an inmate of the Trousdale Turner Correctional Center (TTCC) in Hartsville, Tennessee, and a declaration in support of his motion (Doc. No. 1). The relief he seeks is for the Court to order the custodian of his inmate account to provide Plaintiff with the paperwork he needs to seek pauper status in this case and "to send anyone (DOJ, TBI, US Marshals, FBI) to investigate and help [him]." (Doc. No. 2 at 1).

### I.  Background

On September 9, 2018, in William Carter King v. Candy Norman ("King v. Norman"), No. 2:14-cv-00082 (M.D. Tenn. filed 8/29/2014), the Court received a motion requesting an emergency injunction by Plaintiff William C. King and a declaration in support of his motion. (King v. Norman, Doc. Nos. 42, 43). The Court previously had received a letter from Plaintiff in the same case, although the case was closed on December 17, 2015. (Id., Doc. No. 40). In response to the first letter, the Court reminded Plaintiff that a judgment was entered against him and the case was closed. (Id., Doc. No. 41). The Court informed Plaintiff that, if he had legal claims he wished to pursue as a result of recent events, he must do so through a newly filed lawsuit. (Id.)

1

Nevertheless, after that Order, Plaintiff filed a motion for temporary injunctive relief and a declaration in support of his motion in his closed case. (Id., Doc. Nos. 42, 43). By Order entered on September 20, 2018, the Court directed the Clerk to term the motion in King v. Norman and open the motion and Plaintiff's declaration in a new civil action, which is the instant case.

Plaintiff has not yet filed a complaint. Pursuant to Federal Rule of Civil Procedure 3, "a civil action is commenced by filing a complaint with the court." The complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Plaintiff's motion for emergency injunctive relief is not a complaint. Plaintiff therefore will be required to file a complaint, labeled as such, that complies with Rule 8(a)(2).

Plaintiff also has not submitted the civil filing fee of $400 or an application to proceed in forma pauperis. The Court notes, however, that Plaintiff filed his motion for emergency injunctive relief in part to ask the Court to order the custodian of his inmate trust account to provide him with the information and paperwork he needs to seek pauper status in this Court.

## II.      Motion for Emergency Injunctive Relief

In his declaration filed in support of his motion for emergency injunctive relief, Plaintiff states that, on March 17, 2018, he was physically and sexually assaulted by Sergeant f/n/u Hoskins and two unnamed TTCC corrections officers after these corrections officers ordered gang members to take Plaintiff into a cell where the assault took place. (Doc. No. 1 at 1). Immediately after the assault, Plaintiff went to the prison clinic, and clinic staff sent Plaintiff to an outside hospital emergency room. An emergency room physician's assistant told Plaintiff that he "had been instructed by the charge nurse at TTCC to not do a rape test there, it would be done on [him] upon [his] return to TTCC." (Id.) However, Plaintiff states that no rape test was ever performed.

2

Plaintiff states that he fears for his safety and has attempted suicide four times since the assault, the latest attempt occurring on August 1, 2018, when he was "forced" by TTCC to ride with one of the gang members who assaulted him on his way back from a court proceeding in Nashville. According to Plaintiff, he has written the Department of Justice, the Tennessee Bureau of Investigation, the Federal Bureau of Investigation, and a local prosecutor asking for help but he believes his mail was never sent out of the prison. Plaintiff also states that he did not receive legal documents sent to him from the Bureau of Workers Compensation as well as a pro se packet sent to Plaintiff by this Court.

### III.    Legal Standard

Federal Rule of Civil Procedure 65 governs the Court's power to grant injunctive relief, including temporary restraining orders without notice. Fed. R. Civ. P. 65(b). "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." Univ. of Tex. v. Camenisch, 451 U.S. 390, 395 (1981). However, "[i]f the currently existing status quo itself is causing one of the parties irreparable injury, it is necessary to alter the situation so as to prevent the injury, either by returning to the last uncontested status quo between the parties, by the issuance of a mandatory injunction, or by allowing the parties to take proposed action that the court finds will minimize the irreparable injury." Stenberg v. Checker Oil Co., 573 F.2d 921, 925 (6th Cir. 1978) (internal citations omitted). "Temporary restraining orders and preliminary injunctions are extraordinary remedies which should be granted only if the movant carries his burden of proving that the circumstances clearly demand it." Ciavone v. McKee, No. 1:08-cv-771, 2009 WL 2096281, at *1 (W.D. Mich. July 10, 2009) (citing Overstreet v. Lexington-Fayette Urban Cty. Gov't, 305 F.3d 566, 573 (6th Cir. 2002)). Further, where "a preliminary injunction is mandatory—that is, where its terms would alter, rather than preserve, the status quo

by commanding some positive action . . . the requested relief should be denied unless the facts and law clearly favor the moving party." Glauser-Nagy v. Med. Mut. of Ohio, 987 F. Supp. 1002, 1011 (N.D. Ohio 1997).

In determining whether to issue a temporary restraining order or preliminary injunction under Federal Rule of Civil Procedure 65, a district court must consider the following four factors: (1) the movant's likelihood of success on the merits; (2) whether the movant will suffer irreparable harm without the injunction; (3) whether granting the injunction will cause substantial harm to others; and (4) the impact of the injunction on the public interest. See, e.g., Workman v. Bredesen, 486 F.3d 896, 905 (6th Cir. 2007); Ne. Ohio Coal. for Homeless & Serv. Emps. Int'l Union, Local 1199 v. Blackwell, 467 F.3d 999, 1009 (6th Cir. 2006) (noting that the same four factors apply regardless of whether the injunctive relief sought is a TRO or a preliminary injunction). "These factors are not prerequisites, but are factors that are to be balanced against each other." Jones v. Caruso, 569 F.3d 258, 265 (6th Cir. 2009) (internal quotations omitted).

**IV. Analysis**

In this case, a careful balancing of the factors weighs against granting Plaintiff's request for emergency injunctive relief.

First, under controlling Sixth Circuit authority, the plaintiff's "initial burden" in demonstrating entitlement to preliminary injunctive relief is a showing of a strong or substantial likelihood of success on the merits of his action. NAACP v. City of Mansfield, 866 F.2d 162, 167 (6th Cir. 1989). At this point, Plaintiff's likelihood of success on his claims is roughly equivalent to Defendant's likelihood. The resolution of Plaintiff's claims of physical and sexual assault will come down to the credibility of Plaintiff and the alleged perpetrators as to what happened.

With regard to the second factor, Plaintiff asks for the injunction because he believes that someone at TTCC is preventing him from sending and receiving legal mail and he fears another attack by the same perpetrators of the alleged March attack. (Doc. No. 2 at 2). As to the first concern, it does not appear that harm to Plaintiff is imminent with respect to the issues he is experiencing with prison mail. For instance, he was able to draft the instant motion and declaration, and the Court received his mail in a timely fashion.[1] To the extent that Plaintiff alleges he has been unable to get a certified copy of his inmate trust fund account statement, if jail officials refuse to cooperate with Plaintiff's efforts to get his inmate account statement certified, Plaintiff may submit a signed statement to the Court detailing his attempts to comply with the Court's Order. See Michael Kilpatrick v. James O'Rouke, No. 3:16-cv-01840 (M.D. Tenn. 2016) (Sharp, J.) (Docket No. 3 at 2). Plaintiff has not described his attempts thus far to comply with the Court's prior instructions to submit the civil filing fee or an application to proceed in forma pauperis; thus, Plaintiff has not carried his burden in this regard. Plaintiff's concerns regarding mail he has not received in the past or mail not sent on his behalf will be addressed later in this litigation.

With respect to Plaintiff's fear that he may be attacked again by the same perpetrators, the Court takes Plaintiff's allegations very seriously. Plaintiff alleges that, despite being taken to a hospital emergency room as the result of a sexual assault by a TTCC sergeant and two corrections officers, he was not given a rape test at the direction of a TTCC employee. Plaintiff alleges that, despite his repeated letters to various agencies and individuals seeking help, he has received no response. He alleges that he has attempted suicide on four occasions after the March 2018 assault,

---

[1] The Court notes, however, Plaintiff's allegation that he has not been able to prepare a proper complaint in this matter because he never received the "pro se packet" sent by this Court to Plaintiff on July 5, 2018. (King v. Norman, Doc. No. 41).

5

and that his last suicide attempt was precipitated by being forced to ride back from Court in Nashville with one of his alleged perpetrators, despite having begged not to ride beside him.

As concerning as these allegations are, the Court is unable to find that Plaintiff is likely to suffer irreparable harm absent preliminary injunctive relief. Although he alleges that prison officials have ignored his stated concerns for his safety and that his present housing and transportation arrangements expose him to a likely risk of harm, he does not allege that any further attacks or threats of attacks have occurred. Just last month, Plaintiff was made to ride in the same vehicle with one of the alleged perpetrators, and he does not allege that any inappropriate conduct occurred.

And, while it appears that no third parties would be harmed if the preliminary injunction were issued, neither does it appear that any public interest would be served. Indeed, any relief that this Court would provide would remove from prison officials the deference that they are generally afforded in the administration and control of the prison. See Glover v. Johnson, 855 F.2d 277, 284 (6th Cir. 1988) (setting forth various public policy concerns relating to court intrusion into prison administrative matters and holding that a federal court should not "attempt to administer any portion of a state correctional system program except in the most compelling situations"); Griffin v. Berghuis, 563 Fed. App'x 411, 417–18 (6th Cir. 2014) (citing Turner v. Safley, 482 U.S. 78, 82 (1987)) (decisions concerning the administration of prisons are vested in prison officials in the absence of a constitutional violation, and any interference by the federal courts in that activity is necessarily disruptive).

**V.     Conclusion**

As discussed above, Plaintiff has not borne his burden for issuance of emergency injunctive relief. Plaintiff's allegations do not clearly demonstrate the likelihood of immediate and

irreparable harm before Defendant can be heard. Therefore, Plaintiff's motion will be denied. (Doc. 2).

       An appropriate Order will be entered.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE